LAURA E. DUFFY
United States Attorney
DIANNE M. SCHWEINER
Assistant U.S. Attorney
Cal. State Bar No. 188013
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7654
Facsimile: (619) 546-7751
Email: dianne.schweiner@usdoj.gov

Attorneys for the Defendant
Ray Mabus, Secretary of the Department of Navy

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ARNOLD R. GALLOWAY,<br><br>                      Plaintiff,<br><br>   vs.<br><br>RAY MABUS, SECRETARY OF THE DEPARTMENT OF THE NAVY,<br><br>                    Defendant. | Case No.: 11cv0547-BEN (NLS)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>DATE:     August 6, 2012<br>TIME:     10:30 a.m.<br>CTRM:   3<br>JUDGE:  Honorable Roger T. Benitez |
|---|---|

Defendant RAY MABUS, SECRETARY OF THE DEPARTMENT OF NAVY, hereby submits his Memorandum of Points and Authorities in Support of his Motion for Summary Judgment in the above-entitled matter.

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

Page

I.   STATEMENT OF FACTS ..................................................................................................1

    A.   PLAINTIFF'S RELEVANT EMPLOYMENT HISTORY WITH THE COMMAND ......1

    B.   INITIAL POSTING FOR THE N5 DEPARTMENT HEAD POSITION .........................2

    C.   SUBSEQUENT POSTING FOR A VRA-ELIGIBLE CANDIDATE...............................3

    D.   PLAINTIFF'S DISTRICT COURT LAWSUIT ................................................................4

II.  LEGAL STANDARD ON SUMMARY JUDGMENT......................................................4

III. PLAINTIFF'S SECOND, THIRD AND FIFTH CLAIMS UNDER CALIFORNIA LAW ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY .............................5

IV.  PLAINTIFF'S FOURTH CLAIM UNDER THE FLSA FAILS FOR LACK OF JURISDICTION AND ON THE MERITS..........................................................................6

    A.   THE COURT OF FEDERAL CLAIMS GOVERNS FLSA CLAIMS ...............................6

    B.   PLAINTIFF'S FLSA CLAIM FAILS ON ITS MERITS......................................................6

V.   PLAINTIFF'S TITLE VII DISCRIMINATION CLAIM FAILS ON THE MERITS....................7

    A.   NON-SELECTION CLAIM.................................................................................................7

        1.   Plaintiff's Reassignment back to his Equipment Specialist Position was Not An Adverse Action .......................................................................................7

        2.   Plaintiff's Non-Selection for the Permanent N5 Department Head Position Was Not an Adverse Action, Plaintiff Was Not Similarly Situated to David Silver, and the Agency Had Legitimate Business Reasons for Selecting David Silver as a Disabled Veteran ....................................8

        3.   Plaintiff's Reference to the Prior Cancelled Vacancy Is a Red Herring..................9

    B.   HOSTILE WORK ENVIRONMENT CLAIM ...............................................................10

VI.  CONCLUSION................................................................................................................12

i

# TABLE OF AUTHORITIES

**Cases**                                           Page

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986)..........................................................................................................5

Beal Bank, SSB v. Pittorino
    177  F.3d 65 (1st Cir. 1999)..............................................................................................4

Black v. Tomlinson
    425 F. Supp. 2d 101 (D.D.C. 2006)..................................................................................9

Block v. North Dakota
    461 U.S. 273 (1983)..........................................................................................................5

Bowers v. Peake
    366 Fed. Appx. 562 (5th Cir. 2010)..................................................................................9

British Airways Board v. Boeing Co.
    585 F.2d 946 (9th Cir. 1978) ............................................................................................5

Brown v. GSA
    425 U.S. 820 (1976)..........................................................................................................5

Celotex Corp. v. Catrett
    477 U.S. 317 (1986).......................................................................................................4, 5

Clemente v. U.S.
    766 F.2d 1358 (9th Cir. 1985) .........................................................................................6

Coverdell v. Department of Social & Health Services
    834 F.2d 758 (9th Cir. 1987) ............................................................................................5

Harris v. Forklift Systems, Inc.
    510 U.S. 17 (1993)..........................................................................................................11

McDonnell Douglas Corporation v. Green
    411 U.S. 792 (1973)......................................................................................................7, 8

McGinnis v. Secretary of Defense
    EEOC Appeal No. 01902760 (November 15, 1990) .....................................................11

Moran v. Selig
    447 F.3d 748 (9th Cir. 2006) ............................................................................................8

Nolan v. Cleland
    686 F.2d 806 (9th Cir. 1982) ............................................................................................5

Odima v. Westin Tucson Hotel Co.
    991 F.2d 595 (9th Cir. 1993) ..........................................................................................10

Phillips v. TXU Corp.
    2006 U.S. Dist. LEXIS 94564 (N.D. Tex. 2006)..............................................................9

# TABLE OF AUTHORITIES

**Cases (cont.)** Page

Poer v. Astrue
    606 F.3d 433 (7th Cir. 2010) ..................................................................................................9

Reed v. U.S. Department of Interior
    231 F.3d 501 (9th Cir. 2000) ..................................................................................................5

Saraco v. United States
    61 F.3d 863 (Fed. Cir. 1995)..................................................................................................6

Schoenfield v. Babbitt
    168 F.3d 1257 (11th Cir. 1999) ............................................................................................10

United States v. Mitchell
    445 U.S. 535 (1980)................................................................................................................5

United States v. Sherwood
    312 U.S. 584 (1941)................................................................................................................5

United States v. Testan
    424 U.S. 392 (1976)................................................................................................................5

Walker v. AT&T Technologies
    995 F.2d 846 (8th Cir. 1993) ................................................................................................10

Zumerling v. Devine
    769 F.2d 745 (Fed. Cir. 1985)................................................................................................6

**Statutes**

42 U.S.C. § 2000e-16(a) ................................................................................................................5

38 U.S.C. 4214 ..............................................................................................................................8

5 U.S.C. § 3112..............................................................................................................................8

28 U.S.C. § 1491............................................................................................................................6

**Rules**

5 C.F.R. § 307.101.........................................................................................................................8

5 C.F.R. § 315.707     .....................................................................................................................8

5 C.F.R. § 316.302.........................................................................................................................8

5 C.F.R. § 316.402.........................................................................................................................8

Fed. R. Civ. P. 56(c) ..................................................................................................................4, 5

# I.

# STATEMENT OF FACTS

This action involves allegations by the Plaintiff, ARNOLD GALLOWAY, that he was subjected to discrimination and harassment based on his race as an African-American by the Department of the Navy, Fleet Antisubmarine Warfare Training Center ("FASW" or "the Command").

**A.   PLAINTIFF'S RELEVANT EMPLOYMENT HISTORY WITH THE COMMAND**

Plaintiff began his employment with the FASW in May of 1991 as a Technician III. (Complaint, Doc. No. 1, para. 8).  In April 2002, he was hired as an Equipment Specialist (Electronics) in the same division at the GS9/11 grade. (Complaint, para. 10).  In January of 2008, Plaintiff's supervisor left the Command and Plaintiff took the temporary position of acting Supervisory Equipment Specialist (termed "N5 Department Head"). (Complaint, para. 11).  Plaintiff admits he had concerns over whether he was qualified to fulfill the requirements of the N5 Department Head position, and expressed those concerns to the FASW Human Resources Officer, Kay Collins. (Complaint, para. 11).  Nevertheless, he proceeded to take the acting position.

On April 22, 2009, Plaintiff wrote to his then-supervisor (Commander Michael McCallum) stating he was no longer interested in the position of acting N5 Department Head and he asked to be reassigned back to his non-supervisory Equipment Specialist position. (Complaint, para. 15; NOL Ex. A)[1].  In that email, Plaintiff specifically stated as follows:

> "Request reassignment to the position and job description that I was originally hired to perform at FASW.  It is most unfortunate that my recent job search has failed to secure a new position.  During my remaining tenure at FASW, I prefer to focus my performance on the job (Equipment Specialist-1670-GS9) that HROSW hired me to perform on April, 2002.  I no longer aspire to perform as FASW's N5 acting DH.  The position of N5 acting DH was thrust on me via default on January 2008." (NOL, Ex. A).

Commander McCallum granted Plaintiff's request and restored him to his Equipment Specialist position effective April 27, 2009. (Complaint, para. 16).

At the time Plaintiff left the acting N5 supervisory position, the Navy was operating under a hiring suspension due to budgetary constraints.  Therefore, as the Command was unable to fill the N5

---

[1]   All references to "NOL" refer to Defendant's Notice of Lodgment of Exhibits filed concurrently herewith.

1   Department Head position permanently, another employee (Rick Frazer) was temporarily assigned as
2   the acting N5 Department Head effective April 27, 2009.  (Complaint, para. 17; NOL Ex. B).

**B.     INITIAL POSTING FOR THE N5 DEPARTMENT HEAD POSITION**

Around the same time in April 2009, the Command started the process of generating a vacancy posting to solicit employees to fill the permanent position of N5 Department Head, in anticipation of the hiring suspension being eventually lifted.  (Campbell Decl.; Collins Decl.).   However, although the interview process could proceed, no employee could be permanently hired for the position until the hiring suspension was formally lifted. (Collins Decl.).

At the time the initial vacancy posting was generated, the Navy's process for filling vacancies involved resumes being pulled from the Navy's then-computerized system called "Resumix."  The Resumix system contained the resumes of all individuals who uploaded their resumes in order to be considered for certain future openings.  If an individual's resume met the standard qualifications, skills and pay grades associated with a particular job posting, the computer would automatically flag that resume and include it for consideration by the selecting officials.[2]  (Campbell Decl.; Collins Decl.).

When the Resumix system pulled the applicable resumes for the N5 Department Head position in April 2009, Plaintiff's resume was not included.  This is either due to the fact Plaintiff did not have his resume uploaded onto the system on the particular date the Resumix search was conducted, or Plaintiff's resume did not contain the appropriate language for the required skills and qualifications of the N5 Department Head position such that the Resumix system found it applicable to the posting.  (Campbell Decl.; Collins Decl.).  In either event, since Plaintiff's resume was not pulled and included in the packet of prospective candidates for the initial posting, he was not (and could not have been) interviewed under the initial vacancy posting.  (Campbell Decl.; Collins Decl.).

On April 24, 2009 (after Plaintiff sent his email to Commander McCallum demanding that he be reassigned back to his Equipment Specialist position), a Certificate was issued by the Human Resources Service Center listing the prospective candidates for the N5 position that had been pulled from the Resumix system.  (NOL, Ex. C; Campbell Decl.; Collins Decl.).  Plaintiff was not one of those listed

---

[2]   The Resumix system is no longer in effect and the Navy has since then implemented a different system for posting vacancies and gathering relevant resumes.

candidates due to the reasons explained above. As Plaintiff's name was absent from the Certificate, Plaintiff was not eligible to be interviewed or considered for the N5 Department Head position and his name could not have been put forward to the selecting official. (Campbell Decl.; Collins Decl.).

The April 24, 2009 Certificate was scheduled to expire on May 24, 2009, as all Certificates remain open for just 30 days unless an extension is requested by the hiring authority. (NOL Ex. C; Campbell Decl.). Email messages between the FASW Command and the Human Resources Service Center establish that a series of extensions for the N5 position were requested and granted until July 8, 2009 (due to the hiring suspension still in effect at that time), the last date upon which Human Resources was allowed by law to extend the vacancy. (NOL Ex. D; Campbell Decl.; Collins Decl.). As the hiring suspension had still not been lifted as of July 8, 2009, Human Resources was required to cancel the April 2009 Certificate and the underlying vacancy posting. (NOL Ex. E; Campbell Decl.; Collins Decl.).

**C.    SUBSEQUENT POSTING FOR A VRA-ELIGIBLE CANDIDATE**

On July 20, 2009, after the hiring suspension at the Command was finally lifted, the Command's Human Resources Service Center issued another recruitment process for the N5 Department Head position. At that time the Command elected to fill the position non-competitively under the Veterans Readjustment Act ("VRA") or the 30% or More Disabled Veterans hiring authority in order to afford disabled veterans preference over the position. (NOL Ex. F; Campbell Decl.; Collins Decl.). As explained in more detail later in this brief, the VRA allows federal agencies to give an appointment to any veteran who has retired from active military service with a disability rating of 30% or more. The only qualified candidate pursuant to the VRA/30% or More Disabled Veterans vacancy was David Silver, who was ultimately hired for the N5 position on August 31, 2009. (NOL Exs. G, H; Campbell Decl.; Collins Decl.). Plaintiff is not a 30% disabled veteran and was therefore not eligible for the permanent N5 Department Head position.

**D.    PLAINTIFF'S DISTRICT COURT LAWSUIT**

Despite the fact Plaintiff (a) asked to be removed from the acting N5 Department Head position, (b) did not properly submit his resume so as to ensure its inclusion in the Resumix system under the first vacancy, and (c) was not eligible for the subsequent recruitment action since he was not a 30% disabled

1 veteran, Plaintiff sued the Navy claiming he should have been selected for the permanent N5
2 Department Head position. After proceeding through the Equal Employment Opportunity
3 administrative phase, Plaintiff filed the instant district court lawsuit on March 18, 2011 alleging the
4 following claims: (1) race discrimination under Title VII; (2) discrimination under California
5 Government Code Section 12940(a) (FEHA); (3) failure to prevent discrimination/retaliation under
6 California Government Code Section 12940(k); (4) failure to pay overtime wages under the Fair Labor
7 Standards Act (FLSA); and (5) violation of California Labor Code. In the last year since discovery has
8 opened, Plaintiff and his counsel have chosen to conduct no discovery in this action. The discovery cut-
9 off expired 5 months ago on February 3, 2012.

As this motion will demonstrate, all of Plaintiff's claims are subject to dismissal by way of summary judgment. Specifically, Plaintiff's state court claims cannot survive as the United States has not waived sovereign immunity and has not consented to be sued under those statutes. Similarly, Plaintiff's Fair Labor Standards Act claim (for failure to pay overtime wages) must be brought within the Court of Federal Claims as district courts do not have jurisdiction over such claims. Plaintiff's only remaining claim for race discrimination under Title VII fails on the merits as the permanent N5 Department Head position that was ultimately filled was slotted for a disabled veteran, which Plaintiff is not.

## II.

## LEGAL STANDARD ON SUMMARY JUDGMENT

A motion for summary judgment may be granted when the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Upon a showing that there is no genuine issue of material fact as to a particular claim, the court may grant summary judgment in a party's favor "upon all or any part thereof." Fed. R. Civ. P. 56(a), (b); Beal Bank, SSB v. Pittorino, 177 F.3d 65, 68 (1st Cir. 1999).

A defendant may carry his burden on summary judgment either by offering evidence to negate an essential element of plaintiffs' claim, or by simply pointing out that the plaintiffs' evidence is insufficient to establish an essential element of their claim. Celotex, 477 U.S. at 323-24, 331. As to the

latter approach, the Supreme Court observed in Celotex that:

> where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."

Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(c).

Once the defendant carries his burden, the burden shifts to the plaintiff to produce evidentiary materials demonstrating the existence of a genuine issue of material fact. Celotex, 477 U.S. at 324; Coverdell v. Dep't of Social & Health Services, 834 F.2d 758, 769 (9th Cir. 1987). A plaintiff may carry his or her burden to show a genuine issue of material fact only by offering "significant probative evidence tending to support the complaint." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "A mere scintilla of evidence will not do . . . ." British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). Therefore, to avoid summary judgment, the Plaintiffs in this case must offer "concrete evidence from which [the trier of fact] could return a verdict" in the plaintiffs' favor. Id. at 256.

### III.

### PLAINTIFF'S SECOND, THIRD AND FIFTH CLAIMS UNDER CALIFORNIA LAW ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY

The United States, as sovereign, is immune from suit except to the extent it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 398 (1976); Reed v. U.S. Dept. of Interior, 231 F.3d 501, 504 (9th Cir. 2000). Any waiver of immunity must be unequivocally expressed. Block v. North Dakota, 461 U.S. 273, 287 (1983). Where no such consent exists, sovereign immunity operates as a jurisdictional bar. United States v. Sherwood, 312 U.S. 584, 587-588 (1941).

The statutory provision regarded as waiving sovereign immunity for discrimination suits by federal employees is 42 U.S.C. § 2000e-16(a). In pertinent part this provision states that "[a]ll personnel actions affecting employees or applicants for employment . . . in military departments [Departments of the Army, Navy, and Air Force], . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." A federal employee's exclusive remedy for discrimination-related issues is Title VII's statutory scheme. Brown v. GSA, 425 U.S. 820 (1976). See also Nolan v. Cleland,

686 F.2d 806, 815 (9th Cir. 1982); Clemente v. U.S., 766 F.2d 1358, 1364, n. 7 (9th Cir. 1985).

Plaintiff's second claim under California Government Code Section 12940, third claim under California Government Code Section 12940, and fifth claim for violation of the California Labor Code are all barred based on the doctrine of sovereign immunity.  The United States has not waived its sovereignty with respect to those state law claims and therefore they should be dismissed on summary judgment.

### IV.

### PLAINTIFF'S FOURTH CLAIM UNDER THE FLSA FAILS FOR LACK OF JURISDICTION AND ON THE MERITS

**A.   THE COURT OF FEDERAL CLAIMS GOVERNS FLSA CLAIMS**

This Court lacks jurisdiction to hear Plaintiff's fourth claim for "Failure to Pay Overtime Wages" under the FLSA as that claim is properly brought before the Court of Federal Claims.  Only the Tucker Act, 28 U.S.C. § 1491, confers jurisdiction for monetary claims against the government arising under the FLSA.  Saraco v. United States, 61 F.3d 863 (Fed. Cir. 1995).  In Saraco, plaintiffs filed suit in the Eastern District of Pennsylvania seeking overtime wages, back pay and liquidated damages under the FLSA.  The district court transferred the case to the Court of Federal Claims holding that only the Tucker Act grants jurisdiction of FLSA suits against the United States.  See also Zumerling v. Devine, 769 F.2d 745 (Fed. Cir. 1985) (also holding only the Tucker Act provides jurisdiction of suit to enforce rights under the FLSA).

In the present case, Plaintiff seeks the sum of $33,219 in "unpaid overtime compensation," and an equivalent amount of "liquidated damages" under the FLSA. (Complaint, Doc. No. 1, para. 53). However, this Court is without jurisdiction to hear this claim which falls exclusively within the confines of the Tucker Act, and exclusively within the jurisdiction of the Court of Federal Claims.  Id.  For these reasons, the Court should dismiss Plaintiff's fourth claim under the FLSA for lack of jurisdiction.

**B.   PLAINTIFF'S FLSA CLAIM FAILS ON ITS MERITS**

Even if Plaintiff had filed his FLSA claim in the appropriate Court, his claim fails on the merits. As a federal employee with the Navy, Plaintiff was required to request any overtime in advance of incurring it and any overtime pay must be pre-authorized by management officials.  (Collins Decl.; Ex.

1  I). In this case, Plaintiff neither requested overtime pay nor received approval for overtime prior to
2  allegedly incurring it. (Collins Decl.). It was not until after Plaintiff left the acting N5 position and
3  began litigation against the Command that he raised the issue of unpaid overtime in the first instance.
4  Therefore, Plaintiff's FLSA claim for overtime wages fails substantively as well as for lack of
5  jurisdiction.

## V.

## PLAINTIFF'S TITLE VII DISCRIMINATION CLAIM FAILS ON THE MERITS

In order to prevail on his discrimination claim under Title VII, Plaintiff must satisfy the three-prong test articulated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). First, plaintiff has the burden of demonstrating a prima facie case of discrimination by showing (1) he was in a protected class, (2) he was subject to an adverse employment action, and (3) he was treated differently than similarly situated individuals who were not members of his protected group. Second, assuming Plaintiff satisfies the first prong, the burden then shifts to the Agency to demonstrate a legitimate, non-discriminatory reason for its employment action. Third, the burden shifts back to the Plaintiff to show the Agency's reasons were merely pretext for discrimination. The ultimate burden of proof remains with the Plaintiff.

Plaintiff's allegations of "deprived pay" (i.e. overtime) in his Title VII cause of action are not within the jurisdiction of this Court as explained in the previous section of this brief. Plaintiff's remaining allegations in the first claims that he was "passed over for promotion," "not selected for the position of N5 Department Head," and "subjected to a hostile work environment" fail on the merits.

### A.     NON-SELECTION CLAIM

#### 1.     *Plaintiff's Reassignment back to his Equipment Specialist Position was Not An Adverse Action*

To the extent Plaintiff is claiming he was improperly "dismissed" as the "acting" N5 Department Head, it is undisputed that Plaintiff requested to be removed from that position. Plaintiff sent an email to Commander McCallum on April 22, 2009 requesting that he be reassigned back to his former position, and that request was granted. (NOL Ex. A). Plaintiff expressly admits in his district court complaint that he "was no longer interested in the position of acting N5 DH" and that he "asked to be

reassigned." (Complaint, para. 15). Therefore, Plaintiff will be unable to show his reassignment from the acting supervisor position back to his assigned Equipment Specialist position was an adverse employment action under the McDonnell Douglas standard.

### 2. Plaintiff's Non-Selection for the Permanent N5 Department Head Position Was Not an Adverse Action, Plaintiff Was Not Similarly Situated to David Silver, and the Agency Had Legitimate Business Reasons for Selecting David Silver as a Disabled Veteran

Plaintiff argues he was not selected for the permanent N5 Department Head position based on his race as an African-American. In reality, Plaintiff was not selected because the vacancy was posted as a non-competitive position available only to 30% disabled veterans, and Plaintiff is not in that group.

The law is well-established that an Agency has the unfettered right to hire disabled veterans for certain positions without having to post those positions competitively. Pursuant to 5 CFR § 307.101:

> This part implements 38 U.S.C. 4214 and Executive Order 11521, which authorizes agencies to appoint qualified covered veterans to positions in the competitive service under Veterans Recruitment Appointments (VRAs) without regard to the competitive examining system.

Additionally, 5 U.S.C. § 3112 states:

> Under such regulations as the Office of Personnel Management shall prescribe, an agency may make a noncompetitive appointment leading to conversion to career or career-conditional employment of a disabled veteran who has a compensable service-connected disability of 30 percent or more.

Likewise, 5 CFR § 316.302 provides:

> (b) Noncompetitive term appointment. An agency may give a noncompetitive term appointment, without regard to the requirements of parts 332 and 333 of this chapter, to an individual who is qualified for the position and who is eligible for: . . .
> (4) Appointment under 5 U.S.C. 3112 (veterans with compensable service-connected disability of 30 percent or more).

See also 5 CFR § 316.402 (procedures for making temporary appointments to veterans with compensable service-connected disabilities of 30% or more), and § 315.707 (conversion of disabled veterans from time-limited appointment to career appointment).

In the present case, the selectee for the Supervisory Equipment Specialist Position, David Silver, was a 30% disabled veteran covered by the VRA. (NOL Ex. H). Plaintiff is not a 30% disabled veteran and was therefore not eligible for the permanent supervisory position. In light of these facts, Plaintiff cannot show he suffered an adverse action or that he was treated differently than similarly situated individuals as he was not similarly situated to Mr. Silver. See Moran v. Selig, 447 F.3d 748, 755 (9th

Cir. 2006) (holding a plaintiff must show the candidate with whom he compares himself is similarly situated "in all material respects.")  Management had a legitimate, non-discriminatory reason for selecting Mr. Silver to the position (i.e. he qualified as a 30% disabled veteran), and the Navy is therefore entitled to summary judgment on Plaintiff's non-selection claim.

### *3.  Plaintiff's Reference to the Prior Cancelled Vacancy Is a Red Herring*

In his Complaint, Plaintiff references only the first vacancy posting for the Supervisory Equipment Specialist Position without reference to the actual VRA/30% or More Disabled Veterans recruitment action under which David Silver was hired.  The first vacancy is completely irrelevant due to the fact that (a) Plaintiff's resume was never pulled from the Resumix automated system and therefore he could not have been interviewed or considered for the permanent position; and (b) the first posting was cancelled **(without anyone being hired)** due to the fact it expired prior to the lifting of the Command's hiring suspension.  (NOL Ex. D, E; Campbell Decl.; Collins Decl.).

In <u>Poer v. Astrue</u>, 606 F.3d 433 (7th Cir. 2010), a federal employee similarly sued the Social Security Administration under Title VII claiming he was not promoted to an open position after being chosen as a final candidate on the certificate.  The court granted summary judgment in favor of the defendant Agency due to the fact the posting had expired without any individual being hired under it.  The Court specifically reasoned:

> At the time the certificate was issued, the SSA was under severe budgetary restrictions. A temporary hiring freeze was implemented in January 2006, which 'meant that no new hires could be made and that no full time equivalents (FTE's) could be brought in from another region.' . . . The unrebutted evidence establishes that, during the time that the well-qualified certificate was effective, the Administration was operating with severe budget limitations that impacted [its] ability to bring in FTEs from other regions and its ability to secure relocation expenses for individuals transferring within the region. As a result, the individuals listed on the certificate other than [plaintiff] could not be considered. [The selecting official], consistent with long-standing Region V practice, opted not to fill the position." <u>Id</u>. at 436, 443.

Other cases have similarly held that "the cancellation of an opening is a legitimate, non-discriminatory and non-retaliatory reason for not selecting [the plaintiff] for these positions." <u>Bowers v. Peake</u>, 366 Fed. Appx. 562, 563 (5th Cir. 2010); <u>Phillips v. TXU Corp.</u>, 2006 U.S. Dist. LEXIS 94564, 15-16 (N.D. Tex. 2006) (<u>citing</u> <u>Black v. Tomlinson</u>, 425 F.Supp.2d 101, 108 (D.D.C. 2006)).

1   As in the above-cited cases, Plaintiff here has no evidence that the cancellation of the first,
2   competitive posting for the Supervisory Equipment Specialist position was due to any discriminatory
3   animus based on his race.  Rather, the undisputed evidence shows it was cancelled due to normal
4   expiration and the Command's hiring suspension then in effect.  (NOL Exs. D, E; Campbell Decl.;
5   Collins Decl.).  Furthermore, the Certificate for the first posting demonstrates that two African-
6   Americans were included in the list of candidates to be considered for the competitive posting.  (NOL
7   Ex. C).  Plaintiff's subjective concern that he was not included due to his race simply has no merit.
8   Additionally, under Title VII, an Agency's management officials are entitled to take employment
9   actions for a good reason, a bad reason, a reason based on erroneous facts or for no reason at all, as long
10  as the actions were not for a discriminatory reason.  Management has the right to make good faith
11  determinations about personnel, including the right to assign work and to change an employee's duties,
12  and is permitted discretion in these areas.  It is not up to the court or the jury to micro-manage or
13  second-guess the hiring decisions of business entities.  Schoenfield v. Babbitt, 168 F.3d 1257, 1269
14  (11th Cir. 1999); Odima v. Westin Tucson Hotel Co., 991 F.2d 595, 602 (9th Cir. 1993); Walker v.
15  AT&T Technologies, 995 F.2d 846, 850 (8th Cir. 1993).  Here, it would be inappropriate for the Court
16  or a jury to second-guess the Command's legitimate, non-discriminatory decision to reopen the
17  Supervisory Equipment Specialist position as a VRA-eligible position.  This provides yet another basis
18  for summary judgment in this case.

19  **B.     HOSTILE WORK ENVIRONMENT CLAIM**

20  Although unclear, Plaintiff's Complaint makes vague reference to the fact he was "subjected to
21  instances of hostile work environment." (Complaint, para. 32(e)).  To the extent Plaintiff is including a
22  claim that he was harassed by his supervisors based on his race as an African-American, Plaintiff must
23  establish a prima facie case of harassment by demonstrating (1) membership in a protected class, (2)
24  unwelcome personal slurs or other denigrating or insulting verbal or physical conduct, (3) that the
25  harassment complained of was based on his membership in the protected class, and (4) that the
26  harassment was sufficiently "severe or pervasive" to affect a term or condition of employment, and/or
27  that the harassment had the purpose or effect of unreasonably interfering with his work performance,
28  and/or the harassment had the purpose or effect of creating an intimidating, hostile or offensive work

environment. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993); McGinnis v. Secretary of Defense, EEOC Appeal No. 01902760 (November 15, 1990).

Here, Plaintiff's Complaint is devoid of one single fact suggesting any racial slurs or denigrating verbal or physical conduct on the part of his supervisors. The entire administrative record generated in the context of Plaintiff's Equal Employment Opportunity Commission claim is equally devoid of any such facts. Without any evidence whatsoever, Plaintiff will be unable to prove he was subjected to a hostile work environment that was sufficiently "severe or pervasive." For this reason, any "harassment" claim alleged by Plaintiff should be dismissed on summary judgment.

## VI.

## CONCLUSION

In short, all of Plaintiff's claims are jurisdictionally barred except his First Cause of Action under Title VII. With respect to that claim, Plaintiff has failed to meet his prima facie case and has failed to combat the Agency's legitimate, non-discriminatory reasons for selecting David Silver to the N5 Department Head position. As Plaintiff has no evidence that any decisions made by the Command were motivated by his race as an African-American, summary judgment is appropriate under the circumstances.

DATED:     July 2, 2012                          Respectfully submitted,

                                                 LAURA E. DUFFY
                                                 United States Attorney


                                                  s/ Dianne M. Schweiner
                                                 DIANNE M. SCHWEINER
                                                 Assistant United States Attorney
                                                 Attorneys for Defendant
                                                 Ray Mabus, Secretary of the Navy