LAURA E. DUFFY
United States Attorney
DIANNE M. SCHWEINER
Assistant U.S. Attorney
Cal. State Bar No. 188013
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7654
Facsimile: (619) 546-7751
Email: dianne.schweiner@usdoj.gov

Attorneys for the Defendant
Ray Mabus, Secretary of the Department of Navy

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD R. GALLOWAY,<br><br>                Plaintiff,<br><br>   vs.<br><br>RAY MABUS, SECRETARY OF THE DEPARTMENT OF THE NAVY,<br><br>                Defendant. | Case No.: 11cv0547-BEN (NLS)<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>DATE:    August 6, 2012<br>TIME:    10:30 a.m.<br>CTRM:   3<br>JUDGE:  Honorable Roger T. Benitez |

     Defendant RAY MABUS, SECRETARY OF THE DEPARTMENT OF NAVY, hereby submits his <u>Reply</u> Memorandum of Points and Authorities in Support of his Motion for Summary Judgment in the above-entitled matter.

**I.**

**PLAINTIFF HAS SUBMITTED NO EVIDENCE OF RACE DISCRIMINATION RELATED TO HIS NON-SELECTION CLAIM**

A.    PLAINTIFF HAS NOT SATISFIED HIS PRIMA FACIE CASE

     Although Plaintiff has met the first element of race discrimination in that he is African-American, that is the only element he can satisfy in connection with his prima facie case. It is

undisputed that Plaintiff did not apply for the permanent N5 Department Head position, and in fact he specifically asked to be removed from the acting position on April 22, 2009. (See Ex. "A"). Plaintiff misleads the Court by testifying in his Declaration, under penalty of perjury, that he "applied" for the N5 supervisory position through the Resumix system. The three exhibits on which he relies for this contention (Plaintiff's Exhibits 7, 9 and 11) have nothing to do with the supervisory position. Rather, those exhibits all reference Plaintiff's "YA - 1670 Equipment Specialist position," not the supervisory position which he vacated in April 2009. As is demonstrated by the Reply Declaration of Sean Campbell, National Security Personnel System ("NSPS") positions classified with the letters "YA" were non-supervisory positions, and all supervisory positions within that system were classified as "YC" positions. None of Plaintiff's exhibits reference a "YC" position, only "YA" non-supervisory positions. Plaintiff's sworn Declaration that these exhibits somehow demonstrate he applied for the supervisory N5 Department Head position is simply incorrect.

It is also undisputed that Plaintiff was not qualified for the permanent N5 vacancy under the VRA/30% or More Disabled Veterans hiring authority, which is another requirement of his prima facie case. The permanent position was open only to veterans with at least a 30% service-connected disability and Plaintiff has provided no evidence he is in that category.

Furthermore, Plaintiff's argument that management did not "interview" him under the first vacancy posting because of his race is a red herring. Plaintiff could not have been interviewed by management since his resume was not flagged by the Resumix system and therefore his name did not appear on the Certificate. (See Ex. "C"). Plaintiff's supervisors (the alleged discriminating officials) have nothing to do with Resumix system or the pulling of resumes therein, so they had no involvement whatsoever in the fact that Plaintiff's resume was not flagged by Resumix.[1] Contrary to his arguments in opposition, Plaintiff was not "singled out" or treated differently than any other similarly situated individuals. On the contrary, he simply was not eligible to be selected for the permanent supervisory

---

[1] Plaintiff also mischaracterizes Defendant's argument with respect to the reasons why Plaintiff's resume was not flagged within the Resumix system during the first vacancy posting. Defendant is not arguing there was a "computer glitch." On the contrary, the Resumix system was working just fine. (See Campbell Reply Decl.; Collins Reply Decl.). Any "glitch" is a result of Plaintiff not crafting his resume with sufficient language to render it applicable to the supervisory department head position.

1 position either under the first vacancy (which had expired and under which no one was able to be hired),
2 or under the second VRA-eligible recruitment action. Since Plaintiff has failed to satisfy his prima facie
3 case, summary judgment on his non-selection claims is therefore appropriate.

4 B.     THE NAVY HAD LEGITIMATE BUSINESS REASONS FOR SELECTING DAVID SILVER

5 Defendant also had legitimate business reasons for selecting David Silver for the permanent
6 position. Although Plaintiff focuses his opposition on the fact he was not specifically informed of the
7 vacancy, and the fact he was not interviewed, Plaintiff misses the point of Defendant's motion entirely.
8 <u>No</u> <u>one</u> could have been hired under the first vacancy (including David Silver) due to the hiring
9 suspension in effect at the Command during that vacancy's tenure. This is true even if Plaintiff had been
10 interviewed, and even if he had received the highest ranking amongst all the interviewees.

11 Furthermore, there is no requirement for the Command to specifically notify any employees of a
12 job posting; rather, it is up to the employees to research the Resumix system for any desired positions.
13 (Campbell Reply Decl.). Once the first vacancy expired and the hiring suspension was lifted, the
14 Command had no obligation under the law to re-open the position competitively; rather, it was within its
15 rights to fill the position under the VRA/30% or More Disabled Veterans hiring authority. These facts
16 raised in Defendant's moving brief remain undisputed, and Plaintiff has failed to offer one triable issue
17 of fact suggesting his race as an African-American had anything to do with the fact David Silver was
18 ultimately selected for the N5 Department Head position.

19                                                     **II.**

20 **PLAINTIFF HAS NO VALID RETALATION CAUSE OF ACTION IN HIS COMPLAINT**

21 A.     PLAINTIFF HAS NOT PLED A TITLE VII RETALIATION CLAIM

22 The only retaliation claim pled in Plaintiff's complaint was under a California state statute that
23 does not apply to the federal government. Plaintiff admits in his Opposition brief that sovereign
24 immunity applies to that claim and he does not dispute that position. (Oppo P&As, 3:27-4:1).
25 Therefore, the state law retaliation claim pled in Plaintiff's complaint must be dismissed.

26 Despite this fact, Plaintiff devotes an entire section in his Opposition brief to arguing acts of
27 retaliation. (Oppo P&As, pages 7-8, Section VI). Plaintiff cites to Section 704 of Title VII which
28 prohibits retaliation, yet he has pled no such cause of action in his complaint. Plaintiff's attempt to add a

new retaliation cause of action under Title VII one year and four months after the filing of his complaint, after the close of discovery, and on the eve of summary judgment should not be entertained.

B.  THE ALLEGED ACTS OF RETALIATION OCCURRED BEFORE
    PLAINTIFF'S PROTECTED ACTIVITY AND THEREFORE ARE NOT ACTIONABLE

Plaintiff's arguments in support of a Title VII retaliation claim also fail on the merits. The only "protected activity" in which Plaintiff engaged was the filing of his EEO Complaint on December 18, 2009. (see Ex. "K"). All of Plaintiff's alleged acts of "retaliation" occurred prior to that date, and therefore cannot be said to have occurred in retaliation to his December 2009 protected activity. Plaintiff misleads the Court, under penalty of perjury, by arguing he filed a "grievance" with the Navy shortly after David Silver was selected, and that the Navy "never responded." (Galloway Decl., Doc. No. 13-2, ¶¶ 25, 28; Oppo P&As, 8:4-6). Although Plaintiff filed his formal EEO Complaint in December 2009, he never filed an internal grievance. This is confirmed by the fact that in response to the question "Have you filed a grievance through the negotiated grievance procedure" listed in Plaintiff's EEO Complaint, Plaintiff answered "no." (See Ex. "K," Reply-NOL-40).

Furthermore, a search of the Navy's internal grievance records has revealed that Plaintiff never filed a grievance relating to his claims. (See Emons Reply Decl.). Plaintiff has failed to provide the Court with a copy of his grievance, because no such document exists, and therefore his non-existent grievance cannot be considered a "protected activity" triggering acts of retaliation. Plaintiff's statements that the Navy "never responded to his grievance" are simply untrue, as the Navy conducted a full investigation with respect to his only complaint (his December 2009 EEO Complaint) as is evidenced by the 342-page ROI that was issued thereafter. (Schweiner Reply Decl.; Lawrence-Walton Decl.).

With respect to the timing of the alleged acts of retaliation, Plaintiff has not demonstrated that any of those acts occurred after his only protected activity of filing his EEO Complaint in December 2009. Plaintiff's four alleged acts of retaliation (what he calls "a series of deprivations") include the following:  (1) the changing of his work hours, (2) denying him a parking place, (3) listing his staff description inaccurately on the command telephone roster, and (4) communicating misinformation within the command about his qualifications. None of these four allegations give rise to a valid retaliation claim.

1. Changing of Plaintiff's Work Hours

Plaintiff neglects to inform the Court that his work hours were changed in September 2009 not by one of the alleged discriminating officials, but rather by his new supervisor and the selectee for the permanent N5 Department Head position (David Silver). Attached as Exhibit "L" is a copy of a memo from Mr. Silver to both Plaintiff and the other Equipment Specialist, Richard Frazer, effectuating a change in their work hours. The memo is dated September 25, 2009, three months before Plaintiff's protected activity (the filing of his EEO Complaint). The change of Plaintiff's start time from 5:00 a.m. to 7:00 a.m. has no relationship to his protected activity or the alleged discriminating officials in this action and cannot support a retaliation claim.

2. Denial of Parking Place Allegation

Plaintiff failed to mention any facts regarding a "parking place" in his district court complaint, and has failed to submit any admissible evidence in his Opposition brief demonstrating that a discriminating official subjected him to any adverse actions relating to a parking place after his EEO complaint was filed in December 2009. Defendant is unaware of what Plaintiff is referencing in this regard and certainly a vague reference to a parking space raised for the first time in opposition to a dispositive motion, supported by no actual evidence, cannot be the basis for a retaliation claim.

3. Plaintiff's Staff Description on Command's Telephone Roster

Similarly, Plaintiff's district court complaint fails to mention any facts regarding an adverse action relating to his staff description on a telephone roster. Plaintiff's Opposition brief is equally devoid of any admissible evidence demonstrating that a term or condition of his employment was materially altered because of a telephone roster listing after his December 2009 EEO Complaint was filed.

4. Misinformation Regarding Plaintiff's Qualifications

Plaintiff's Opposition brief and Declaration make vague references to the fact that "the command spread misinformation concerning his qualifications," without specifying who made the statements, to whom they were made, why they were inaccurate, and whether they were made before or after Plaintiff's December 2009 EEO Complaint. Under the circumstances, Plaintiff's vague references to "misinformation regarding his qualifications" cannot substantiate a retaliation claim under Title VII.

In short, even if Plaintiff were able to overcome the fact he did not plead a Title VII retaliation claim in his district court complaint filed in March 2011, Plaintiff has failed to submit any admissible evidence with respect to the instant motion for summary judgment suggesting that Defendant retaliated against him after the filing of his EEO Complaint. Plaintiff's attempts to tie the four above-referenced actions to the protected activity of filing an internal "grievance" must also fail since he never filed any such grievance with the Navy.

### III.

### PLAINTIFF HAS FAILED TO ALLEGE A VALID HOSTILE WORK ENVIRONMENT CLAIM BASED ON RACE

On pages 8 and 9 of his Opposition brief, Plaintiff attempts to allege a hostile work environment claim based on race by pointing to the following incidents: (1) he was not alerted to the permanent N5 Department Head position offering, (2) he was excluded from an interview, (3) he filed a grievance but no response was ever provided by the Navy, and (4) misinformation about his qualifications and future employment desires was communicated in the command. Even if these allegations were true, they do not demonstrate harassment that was sufficiently "severe or pervasive" as required by well-established Title VII law. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993); McGinnis v. Secretary of Defense, EEOC Appeal No. 01902760 (November 15, 1990).

With regard to his allegation he was not alerted to the permanent N5 Department Head position offering, there is no requirement that anyone personally notify any employees of an opening. (Campbell Reply Decl.). It is incumbent upon Plaintiff to check the Resumix system for any openings for which he may be qualified, and it is his responsibility to ensure his resume is sufficiently up to par such that it will be flagged for the appropriate openings when they occur.

Furthermore, the fact that Plaintiff was not interviewed under the first vacancy posting cannot constitute an act of harassment by any discriminating official about which he complains, as those individuals had nothing to do with the fact that Plaintiff's resume was not flagged by the Resumix system. As explained in Defendant's moving brief, Plaintiff was not eligible to be interviewed because his name did not appear on the Certificate related to the first vacancy posting. As also explained above, even if he had been interviewed and had ranked at the top, he could not have been selected for the

permanent position due to the Command's hiring suspension and the expiration of the first Certificate. Therefore, the fact that Plaintiff was not interviewed does not constitute an adverse action nor did he suffer any damages as a result.

As explained above, Plaintiff cannot possibly argue the Navy's "failure to respond to his grievance" constitutes an act of harassment as Plaintiff never filed a grievance. And lastly, Plaintiff's vague reference to someone spreading "misinformation about his qualifications" does not suffice to establish a harassment claim. Plaintiff has submitted no evidence of any racial slurs, denigrating or insulting verbal or physical conduct, or any evidence whatsoever that the above-referenced incidents were based on his race. For these reasons, his hostile work environment claim cannot survive summary judgment.

**IV.**

**A TRANSFER OF PLAINTIFF'S FLSA CLAIM IS NOT WARRANTED**

With respect to Plaintiff's request that his FLSA claim be transferred to the Court of Federal Claims, Plaintiff ignores Defendant's arguments on the merits which demonstrate that no such transfer is warranted. Plaintiff has been employed with the Navy since 1984 and cannot possibly argue in good faith that despite those 28 years in federal service, he was unaware of the requirement that he receive approval for overtime in advance of incurring it. Defendant requests that the Court take judicial notice of the Navy's Center for Surface Combat Systems' Regulation governing its employees' timekeeping, leave and pay issues, of which Plaintiff was well aware. (Ex. "I"). A court may take judicial notice of agency rules and regulations. Roemer v. Board of Public Works of Maryland, 426 U.S. 736, 742 n.4 (1976); Ray v. Aztec Well Service Co., 748 F.2d 888, 889 (10th Cir. 1984).

Plaintiff's estoppel argument is likewise unavailing as he was not ignorant of the federal government's requirement that he request overtime in advance. It is not reasonable for Plaintiff to request 600 hours of overtime, *almost two years after he alleges it was incurred,* and after filing an EEO complaint, without ever having received approval or requesting the additional pay in advance. Therefore, Plaintiff's overtime claim fails on the merits and does not warrant transfer to the Court of Federal Claims.

**V.**

**PLAINTIFF'S WRITTEN OBJECTIONS TO EVIDENCE ARE UNFOUNDED**

Defendant's moving exhibits have been properly authenticated through the Declarations of Sean Campbell, Kay Collins and Dianne Schweiner.  Plaintiff's written objections to evidence will not suffice to avoid summary judgment.

A.   DEFENDANT'S EXHIBITS "A" AND "B" - EMAILS CONTAINED WITHIN ROI

Defendant's moving Exhibits "A" and "B" (both documents contained in Plaintiff's EEO Report of Investigation) are properly authenticated by Federal Rule of Evidence 803(6).  That Rule authenticates records of a regularly conducted activity such as federal agency investigations following the filing of an employee's EEO complaint.  (See Schweiner Reply Decl.).

Furthermore, a document may be authenticated by its appearance, contents, substance, and other distinctive characteristics. See Fed.R.Evid. 901(b)(4); Gregg v. Ohio Dep't of Youth Servs., 661 F. Supp. 2d 842, 852 (S.D. Oh. 2009).  The records contained within Plaintiff's ROI are also authenticated under Federal Rule of Evidence 901(b)(1) which states authentication is satisfied by "testimony that an item is what it is claimed to be," and Rule 901(b)(7) which states documents can be authenticated by "evidence that . . . a purported public record or statement is from the office where items of this kind are kept." Id. As the Court explained in Gregg:

> "In this case, the Report of Investigation bears the letterhead and a facsimile of the seal of ODYS. It also bears facsimiles of the signatures of the investigator and his supervisor. The contents and substance of the report also support a finding that the report is what it is purported to be. Both [defendants] recalled in their depositions being interviewed by [the investigator] shortly after the events in question, and the reports contain summaries of their statements at that time. These circumstances make it unlikely that the report was prepared by an entity other than ODYS."

Gregg, 661 F. Supp. at 853.

As confirmed by the attached Declaration of Terryl D. Lawrence-Walton, the Plaintiff's ROI was issued and maintained by the Department of Defense, Civilian Personnel Management Service (Investigations and Resolutions Division), which maintains records of Navy employee EEO Complaints and investigations relating thereto.  Attached as Exhibit "J" to Defendant's Reply Notice of Lodgment are the cover letter and additional pages from the ROI demonstrating the Department of Defense seal, the Department of Defense letterhead, and the signatures of the Navy Component's Director of

1 Operations and the specific investigator assigned to Plaintiff's case (Terryl Lawrence-Walton).

2 Pursuant to administrative regulations, Plaintiff received a copy of the ROI upon completion of the investigation, and he cannot avoid summary judgment by arguing at this stage that the contents of the ROI (including his own emails) are somehow untrustworthy or improperly authenticated.  See also Sesay v. Chertoff, 2008 U.S. Dist. LEXIS 88250 (S.D. Cal. 2008), at *20, fn. 2, reversed and remanded on other grounds (holding "the Government correctly represents that the ROI is admissible as a business record under FRE 803(6), 901(b)(1), and 902(11)").  Although Defendant contends the ROI documents were properly authenticated in the moving briefs, the additional pages in Exhibit "J" further confirm the trustworthiness of the ROI.  (See Schweiner Reply Decl.; Lawrence-Walton Reply Decl.).

Additionally, aside from authentication, Plaintiff's April 22, 2009 email to Commander McCallum is a party admission and is properly admitted for the truth of the matters asserted therein under Federal Rule of Evidence 801(d)(2).

B.   DEFENDANT'S EXHIBIT "I" - NAVY REGULATION REGARDING OVERTIME

Exhibit "I" to Defendant's moving Notice of Lodgment is the Navy's Center for Surface Combat Systems' Regulation governing its employees' timekeeping, leave and pay issues.  A court may take judicial notice of agency rules and regulations.  Roemer v. Board of Public Works of Maryland, 426 U.S. 736, 742 n.4 (1976); Ray v. Aztec Well Service Co., 748 F.2d 888, 889 (10th Cir. 1984).  Here, the Navy's timekeeping instruction is available to all employees, is not subject to reasonable dispute, and Plaintiff has not questioned (and cannot question) its accuracy.  Pursuant to Federal Rule of Evidence 201, the court may take judicial notice at any stage of the proceeding and Defendant requests this Court take judicial notice of the Navy's timekeeping regulation attached as Exhibit "I."

**VI.**

**CONCLUSION**

In sum, Plaintiff's Opposition brief fails to raise a triable issue of fact with respect to any of his race discrimination or retaliation claims. After demanding to be removed from the acting N5 supervisor position, Plaintiff was not selected for the permanent position because he was ineligible under the VRA/30% or More Disabled Veterans hiring authority.  Plaintiff has failed to plead a Title VII retaliation claim in his district court complaint, and even if he had, his alleged acts of retaliation all

occurred prior to his protected activity and therefore there is no causal relationship between those events. Plaintiff's hostile work environment claim likewise fails as he has failed to show any of the alleged acts of harassment were adverse actions, or were sufficiently severe or pervasive to substantiate that claim. Lastly, Plaintiff's FLSA claim for overtime pay fails on the merits and therefore should not be transferred to the Court of Federal Claims. Due to Plaintiff's inability to raise one triable issue of fact with respect to the absence of any race discrimination, summary judgment should be granted in Defendant's favor.

DATED: July 30, 2012

Respectfully submitted,

LAURA E. DUFFY
United States Attorney


 s/ Dianne M. Schweiner
DIANNE M. SCHWEINER
Assistant United States Attorney
Attorneys for Defendant
Ray Mabus, Secretary of the Navy