# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD GALLOWAY,<br><br>                 Plaintiff,<br>vs.<br><br>RAY MABUS, SECRETARY OF THE NAVY<br><br>                 Defendant. | CASE NO. 11-cv-0547 BEN (NLS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and TRANSFERRING CASE TO COURT OF FEDERAL CLAIMS**<br><br>[Docket No. 11] |

Now before the Court is the Motion for Summary Judgment of Defendant, Ray Mabus, Secretary of the Navy. For the reasons stated below, Defendant's Motion for Summary Judgment is granted as to all claims except the fourth claim for relief. The fourth claim for relief is transferred to the Court of Federal Claims.

## BACKGROUND

Plaintiff, Arnold R. Galloway, is an African-American male who has worked for the Navy Fleet Antisubmarine Warfare Training Center in San Diego, California, since April 2002. In January 2008, Plaintiff was promoted to the Acting N5 Department Head ("N5 DH") position. Plaintiff alleges he performed well in the position and requested consideration for the permanent N5 DH position. Over time, Plaintiff apparently grew frustrated in his role as Acting N5 DH and wrote an email to Commander McCallum requesting reassignment to his previous position. On April 24, 2009, Commander McCallum and the Fleet Antisubmarine Warfare Training Center Commanding Officer, Captain Moss, allegedly met with Plaintiff to discuss the email. Plaintiff told them he was not interested in continuing his work as Acting N5 DH without another pay raise. On April 27, 2009, Commander McCallum allegedly dismissed Plaintiff as Acting N5 DH. Rick

Frazier replaced Plaintiff as the Acting N5 DH. Plaintiff alleges Frazier received additional resources to manage the department – resources that Plaintiff had requested but did not receive. Plaintiff also alleges he worked 600 hours of uncompensated overtime as Acting N5 DH from January 2008 to April 2009.

On the other hand, Plaintiff claims he desired a permanent position as N5 Department Head. He alleges that on August 18, 2009, he learned the Navy was hiring for the permanent position of N5 DH. Plaintiff alleges that his resume was not selected for consideration because he was African-American and that the three candidates who were considered were all Caucasians. The Navy alleges that the recruitment for the new position was limited to retired veterans with at least a 30% disability. Mr. Silver, a Caucasian and a retired veteran with at least a 30% disability rating, was selected to fill the position. Plaintiff believes the Defendant discriminated against him on the basis of his African-American race.

On December 18, 2009, Plaintiff complained to the Equal Employment Opportunity ("EEO") Commission that he had been subjected to a hostile work environment on the basis of his race/color (African-American) and religion (Islam). He contends he suffered reprisal when: (1) he was not paid for overtime hours he worked as Acting N5 DH; (2) he was dismissed as Acting N5 DH; (3) he was not selected for the permanent N5 DH position; (4) an Executive Officer tried to discredit his suitability for the position; and (5) his work schedule was changed.

In this case, Plaintiff asserts five claims for relief: (1) Discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e), *et seq.*); (2) Discrimination in violation of FEHA (California Government Code § 12940(a)); (3) Failure to Prevent Discrimination/Retaliation (Government Code § 12940(k)); (4) Failure to Pay Overtime Wages (Violation of Fair Labor Standards Act); and (5) Violations of the California Labor Code.

Under Federal Rule of Civil Procedure 56, Defendant moves for summary judgment contending:

1. Plaintiff's First Cause of Action under Title VII fails on the merits;

2. Plaintiff's Second, Third, and Fifth Causes of Action for violations of California state law cannot survive as the United States has not waived sovereign immunity and has not consented

1  to be sued under those statutes;

2      3. Plaintiff's Fourth Cause of Action under the Fair Labor Standards Act (for failure to pay
3  overtime wages) must be brought within the Court of Federal Claims as district courts lack
4  jurisdiction and also fails on the merits.

## LEGAL STANDARD

6      Summary judgment is appropriate when no genuine issue of material fact exists and the
7  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v.*
8  *Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" when, under the governing substantive
9  law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
10 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is
11 genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving
12 party." *Anderson*, 477 U.S. at 248. In evaluating whether summary judgment is appropriate, the
13 court may limit its review to the summary judgment papers and is not obligated "to scour the
14 record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir.
15 1996) (*citing Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

16     The party seeking summary judgment always bears the initial burden of establishing the
17 absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can
18 satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the
19 non-moving party's case; or (2) by demonstrating that the evidence supporting one or more
20 essential element of the non-moving party's claims or defenses is insufficient such that the non-
21 moving party will fail to carry its ultimate burden of persuasion at trial. *Id.* at 322-23; *Nissan Fire*
22 *& Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party fails to
23 discharge this initial burden, summary judgment must be denied and the court need not consider
24 the non-moving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *see*
25 *also Henry v. Gill Indus., Inc.,* 983 F.2d 943, 950 (9th Cir. 1993) ("the party opposing [a motion
26 for summary judgment] is under no obligation to offer affidavits or any other materials in support
27 of its opposition. Summary judgment may be resisted and must be denied on no other grounds
28 than that the movant has failed to meet its burden of demonstrating the absence of triable issues.").

1  However, should the moving party satisfy this initial burden, the non-moving party cannot
2 defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to
3 the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);
4 *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). "The mere existence of
5 a scintilla of evidence in support of the non-moving party's position is not sufficient." *Id. (quoting*
6 *Anderson,* 477 U.S. at 252). Rather, the non-moving party must "go beyond the pleadings and by
7 her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,'
8 designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324
9 (*quoting* Fed. R. Civ. P. 56(e)). In other words, the non-moving party must demonstrate that a
10 reasonable jury might return a verdict in its favor. *Suzuki Motor Corp. v. Consumers Union of*
11 *U.S., Inc.*, 330 F.3d 1110, 1132 (9th Cir. 2003) (*citing Anderson*, 477 U.S. at 257).
12  When making its determination, the Court must view all inferences drawn from the
13 underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec.*
14 *Indus. Co.*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the
15 drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he
16 [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255.

17 **DISCUSSION**

18 **A.  Plaintiff's First Claim for Relief**

19  Plaintiff's first claim seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
20 § 2000(e), *et seq.* His claim has two prongs. For the first prong he maintains that he was not
21 selected for the supervisory position because of his race. For the second prong, he asserts that he
22 was subjected to a hostile work environment in retaliation for making an equal opportunity
23 employment complaint. Each is considered in order.
24  Title VII prohibits employment discrimination by federal agencies with respect to a
25 person's race, color, religion, or national origin. The proper legal framework for considering
26 summary judgment on a Title VII non-selection claim is the three-part shifting burden approach
27 articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Villiarimo v. Aloha Island*
28 *Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). For this approach, the plaintiff must carry the

initial burden of establishing a prima facie case of racial discrimination by showing:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that the position was filled by a non-minority.

*McDonnell*, 411 U.S. at 802; *Aloha Island Air*, 281 F.3d at 1062. The degree of proof required to establish a prima facie case on summary judgment is minimal. *Aloha Island Air*, 281 F.3d at 1062. The burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* (*citing McDonnell*, 411 U.S. at 802). Assuming the employer satisfies this burden, the burden then shifts back to the plaintiff. The "plaintiff must show the articulated reason is pretextual." *Id.* In this case, Defendant has articulated a non-discriminatory reason for not selecting Galloway, and Galloway has not identified evidence of pretext.

It is not clear that Plaintiff has established a prima facie case of discrimination. Certainly, Plaintiff is a racial minority (African-American). And certainly, Plaintiff was not selected for the permanent N5 department head position while another person who was not a racial minority was selected. However, as Defendant points out, Plaintiff was not qualified for the new position because he was not retired military with at least a 30% disability. Moreover, he had been previously appointed to the acting department head position and had voluntarily relinquished it. In his Complaint, Plaintiff states that by April 20, 2009, he "had become increasingly frustrated that he had not been able to secure the position of [permanent] N5 DH, and was no longer interested in the position of Acting N5 DH." Complaint ¶ 3. As a result, Plaintiff submitted to Defendant an email explaining his frustration and request to be reassigned to his former position. On April 27, 2009, Plaintiff was dismissed as Acting N5 DH and reassigned to his former position. Defendant has included a copy of the email sent by Plaintiff. *See* Notice of Lodgment of Ex.'s in Supp. of Def.'s Mot. for Summ. J., Ex. "A." Plaintiff's removal from the Acting N5 DH position occurred primarily because of his request to be removed.

Plaintiff also claims he repeatedly inquired about when the hiring freeze on the permanent N5 DH position was going to lift. He claims he applied for the permanent N5 DH position in August 2008. Plaintiff claims he was qualified for the position. However, the only evidence to

this effect is his own declaration, wherein he states: "My background, education, training, and experience made me an exemplary candidate for this new position and, in fact, the best candidate." Decl. of Galloway (dated July 19, 2012) ¶ 21. Plaintiff alleges his resume was not selected for consideration because of his race. He alleges the position of permanent N5 DH went to Silver, a Caucasian, who Plaintiff claims was less qualified. Once again, Plaintiff's only evidence is his own declaration, wherein he speculates: "The only conclusion I could reach . . . is that I was purposefully excluded from consideration for the new N5 position and that such exclusion was based on the fact that I am African-American. There simply was no other explanation as my credentials were superior to those of others who were considered." *Id.* ¶ 24.

In defense, Defendant remonstrates that Plaintiff was neither qualified nor similarly situated as the chosen candidate, Silver, because the permanent N5 DH position was posted as a non-competitive position available only to 30% disabled veterans. There is no dispute that Plaintiff is not in that group. Hence, explains Defendant, Plaintiff was unqualified. Defendant claims that management had a legitimate, non-discriminatory reason for selecting Silver to the position and the Navy is, therefore, entitled to summary judgment on Plaintiff's non-selection claim. In support, Defendant points to evidence in the form of a Department of the Navy RECRUIT/FILL REQUEST FORM, which, under "Recruitment Source: Identify those recruitment sources you would like to utilize to fill your vacancy," lists "VRA/30% DAV" as the only selected Recruitment Source. *See* Notice of Lodgment of Ex.'s in Supp. of Def.'s Mot. for Summ. J., Ex. "F." Defendant also provides a statement from the Department of Veterans Affairs that certifies Silver is entitled to compensation for service-connected disability rated at 30% or more. *Id.*, Ex. "H." Defendant also submitted a declaration from Sean T. Campbell, a Supervisory Human Resources Specialist at the Navy Region Southwest, Broadway Human Resources Office in San Diego, CA. *See* Decl. of Sean T. Campbell in Supp. of Def.'s Mot. for Summ. J. Campbell verifies the accuracy of Exhibits F and H and that the permanent N5 DH position was to be filled with a 30% or more disabled veteran.[1]

---

[1] Plaintiff objects to Defendant's exhibits, including Exhibits F and H, claiming the matters set forth are not personally known to the declarant. Plaintiff also objects that the exhibits are inadmissible hearsay which have not been authenticated. According to the Plaintiff, because there is no affidavit of a custodian of records establishing the business records exception to the hearsay

Assuming for the moment that Plaintiff has met his minimal burden of establishing a prima facie case of discrimination, Defendant has met its burden of articulating a legitimate and nondiscriminatory reason for not selecting Plaintiff for the permanent N5 DH position. The burden then shifts back to Plaintiff to demonstrate pretext.

Not surprisingly, Plaintiff argues that the use of the VA selection method was a pretext to exclude Plaintiff because of his race. It is a close question. There is no explanation about why the Defendant used the disabled veteran preference. There is no evidence provided by either party about how the decision was made. There is no direct evidence about who made the decision or the concerns that drove the decision or whether racial animus had any part. Plaintiff says that, "[n]o evidence has been presented that it was the custom and practice of this command, or the Navy as a whole, that if hiring freezes prevented filling of a position that the command/Navy would then seek appointment under the VA selection process." But the absence of evidence of a past custom is not much evidence of pretext. Plaintiff further contends that, "[t]here is a fair and reasonable inference that the use of the VA selection method was done as a ruse to avoid selection of [Plaintiff] for the new position, his superiors well knowing he would not meet the VA eligibility criteria."

Once again, Plaintiff raises a question that begs to be answered. But there is no answer forthcoming. The Defendant may certainly use its hiring authority to prefer 30% or more disabled veterans and do so lawfully. There is no direct evidence that it did so as a pretext. Plaintiff may rely on circumstantial evidence, rather than direct evidence of pretext. But if he does, "such

---

rule, and because the declarant does not say he has personal knowledge that the documents are what they purport to be, the exhibits may not be considered.
    Under Federal Rule of Evidence 901, authentication of an exhibit is a condition precedent to admissibility and "is satisfied by evidence sufficient to support a finding that the document is what its proponents claim." Unauthenticated documents should not be considered in a motion for summary judgment. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). Nevertheless, authentication may be achieved in more than one way.
    Under Rule 901(b)(4), "documents . . . could be authenticated by review of their contents if they appear to be sufficiently genuine." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 n.24 (9th Cir. 2002). A proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *Id*. at 774. Authenticity may be satisfied by the "[a]ppearance, contents substance, internal patterns, or other distinctive characteristics taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4).
    In light of the evidence presented by the Defendant and the affidavits supporting it, this Court finds the Defendant's Exhibits F and H have been properly authenticated. Other than his evidentiary objections, Plaintiff makes no argument to contradict the weight of this evidence.

evidence must be both specific and substantial." *Aloha Island Air*, 281 F.3d at 1062. In this case, the circumstantial evidence of pretext is not substantial. It is speculative and conclusory opinion contained only within Plaintiff's own declaration. And it is uncorroborated opinion. This is not enough to create a genuine issue of fact and overcome summary judgment. The Ninth Circuit has refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony. *Aloha Island Air*, 281 F.3d at 1061; *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) ("The district court was on sound footing concluding that [plaintiff] put forward nothing more than a few bald, uncorroborated, and conclusory assertions rather than evidence."); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("[T]he district court was correct in determining that there was no genuine issue of material fact. A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."); *Batiz v. Am. Comm. Sec. Serv.*, 776 F. Supp. 2d 1087, 1098 (C.D. Cal. 2011) (plaintiff's self-serving and uncorroborated declaration and deposition testimony was insufficient to create a genuine issue of material fact).

Because the Plaintiff was not a 30% or greater disabled veteran, he was not qualified for the permanent position. He has not produced direct or substantial circumstantial evidence that the Defendant's articulated legitimate reason for non-selection was a pretext. Therefore, under *McDonnell*, Plaintiff has not met his burden. Defendant is entitled to summary judgment on his claim of discriminatory non-selection for the permanent N5 DH position.

Plaintiff's claim of a retaliatory hostile work environment also fails on summary judgment. In his federal Complaint, Plaintiff omits any description of a specific instance of the hostile work environment he claims he endured. Instead, Plaintiff makes an oblique reference to his formal complaint to the EEO in which he alleges that, an "(4) Executive Officer tried to discredit his suitability for the position, and (5) his work schedule was changed." (Compl. ¶ 5.) There is no further discussion in Plaintiff's Complaint about a specific hostile work environment. Defendant correctly points out that Plaintiff's Complaint offers no facts. In his opposition to the Motion for Summary Judgment, Plaintiff states in a declaration that his complaints about his exclusion from the N5 DH selection process resulted in the following actions taken against him:

> "(a) a parking space that was designated for COR/ACOR representatives was taken from [him]; (b) the work hours [he] had been assigned for year[s] from 0500-1330 were changed to 0700-1500, which affected [his] lifestyle and enjoyment; (c) [he] was given inferior placement and inaccurate staff description on the command telephone roster; (d) the command spread misinformation concerning my qualifications and desire for the N5 Department head position. Finally [he] received no response to a grievance [he] had filed even though applicable procedures required a response."

*See*, Decl. of Arnold R. Galloway in Opp'n to Def.'s Mot. for Summ. J. ("Pl. Decl. in Opp'n.") ¶¶ 6-7.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal brackets and quotation marks omitted). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Id.*

Although a plaintiff may rely on notice pleading in the original complaint, at the summary judgment stage, he must provide evidence. Here, Plaintiff has failed to provide any evidence of a hostile work environment. As to the loss of his parking space, Plaintiff has not presented any evidence regarding this alleged harm. The explanation may be as reasonable as the consequence of Plaintiff requesting to be removed from the Acting N5 DH position to return to his previous ACOR position. (Pl. Decl. in Opp'n ¶ 5.) Regarding a change in Plaintiff's working hours, Defendant's Exhibit "L" suggests that Plaintiff's working hours were changed on September 25, 2009, three months prior to Plaintiff's filing of his EEO Complaint. Obviously, this change in hours could not be a result of Plaintiff's later complaint to the EEO. Moreover, the evidenced explanation was the supervisor's desire for office hours to be more closely aligned with the core hours of the rest of the Navy base. Also absent is any evidence regarding his description on the command's telephone roster. Similarly, Plaintiff presents no evidence as to how the command allegedly spread misinformation about him or what the alleged misinformation concerned. Lastly, Plaintiff alleges he failed to receive a response about his grievance from the Navy, but he presents no evidence that he, in fact, submitted such a grievance to the Navy. In short, Plaintiff has failed to demonstrate his "workplace is permeated with 'discriminatory intimidation, ridicule, and

insult.'" *Harris*, 510 U.S. at 21 (internal citation omitted). Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

**B. Plaintiff's Second, Third, and Fifth Claims For Relief**

Defendant claims that Plaintiff's second claim for relief (Discrimination, Violation of FEHA under California Government Code Section 12940), third claim for relief (Failure to Prevent Discrimination/Retaliation under California Government Code Section 12940(k)), and fifth claim for relief (Violation of California Labor Code) are each barred by the doctrine of sovereign immunity. Defendant claims the United States has not waived its immunity with respect to those state law claims and, therefore, summary judgement is appropriate. Plaintiff does not dispute this position. Therefore, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's second, third, and fifth claims for relief.

**C. Plaintiff's Remaining Fourth Claim For Relief**

Defendant claims this Court does not have jurisdiction over Plaintiff's fourth claim for relief (Failure to Pay Overtime Wages in Violation of FLSA) because jurisdiction for monetary claims against the federal government arising under the FLSA can only be brought before the Court of Federal Claims, as per the Tucker Act, 28 U.S.C. § 1491. Plaintiff agrees with Defendant that this Court lacks jurisdiction and that this claim should be transferred. Therefore, pursuant to 28 U.S.C. § 1631, Plaintiff's fourth claim for relief is transferred to the United States Court of Federal Claims.

**CONCLUSION**

Defendant's Motion for Summary Judgment is **GRANTED** in regards to Plaintiff's first, second, third, and fifth claims for relief.

Pursuant to 28 U.S.C. § 1631, the remainder of this case is hereby transferred to the U.S. Court of Federal Claims, Howard T. Markey National Courts Building, 717 Madison Place, N.W., Room 103, Washington, DC 20439.

**IT IS SO ORDERED.**

DATED: February 4, 2013

Hon. Roger T. Benitez
United States District Judge